**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| JASON A. PEFFLEY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | |
| UNITED SEATING AND MOBILITY, LLC d/b/a NUMOTION, | ) ) ) | |
| Defendant. | ) ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, Defendant United Seating and Mobility, LLC d/b/a/ Numotion ("Numotion" or "Defendant") files this Notice of Removal of Plaintiff's civil action from the Chancery Court for the Twenty First Judicial District in and for Williamson County, Tennessee, to this Court based on diversity of citizenship under 28 U.S.C. § 1332(d). In support of its Notice of Removal, Numotion states as follows:

### I. PLEADINGS AND BACKGROUND

1. On March 25, 2025, Plaintiff Jason A. Peffley ("Plaintiff"), individually and on behalf of all others similarly situated, filed a putative class action complaint (the "Complaint") against Numotion in the Chancery Court for the Twenty First Judicial District in and for Williamson County, Tennessee (the "State Court Action").

2. Plaintiff brought the State Court Action against Numotion alleging that "cybercriminals" accessed the "personally identifiable information ("PII") and protected health information ("PHI") (collectively, the "Private Information") of Plaintiff and Class Members," including "names, Social Security number[s], driver's license number[s], date[s] of birth, payment

and financial accounts, insurance information, treating provider, and treatment and/or diagnostic information." Compl. ¶¶ 1, 6.

3.   Plaintiff alleges as a result of the Data Incident he and putative class members have suffered a variety of generic injuries, including (1) "actual identity theft;" (2) "the compromise, publication, and/or theft of their Private Information;" (3) "out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information"; (4) "lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach"; (5) "the continued risk to their Private Information"; (6) "future costs in terms of time, effort, and money that will be expended as result of the Data Breach"; and (7) "the diminished value of Defendant's they received." *Id.* at ¶ 198.

4.   Based on these allegations, Plaintiff asserts ten causes of action against Numotion for: (1) negligence; (2) negligence *per se*; (3) breach of contract;(4) breach of implied contract; (5) breach of fiduciary duty; (6) unjust enrichment; (7) invasion of privacy/intrusion upon seclusion; (8) declaratory judgment and injunctive relief; (9) violation of California's Unfair Competition Law; and (10) violation of California's Customer Records Act. *See generally*, Compl.

5.   Plaintiff purports to bring his complaint on behalf of both a Nationwide Class defined as "[a]ll individuals whose Private Information was compromised in the Data Breach beginning on or about September 2, 2024, including all persons who received the Notice Letter from Defendant," and a California subclass defined as "[a]ll individuals residing in California whose Private Information was compromised in the Data Breach beginning on or about September 2, 2024, including all persons who received the Notice Letter from Defendant" (together, the "Class"). *Id.* at ¶ 131.

6.    Plaintiff alleges that the Class is comprised of approximately 494,000 individuals. *Id.* at ¶¶ 39, 136.

## II.    REMOVAL IS TIMELY

7.    On March 25, 2025, Plaintiff filed this instant lawsuit, and on March 31, 2025, Plaintiff served Numotion with copies of the Summons and Complaint.

8.    Pursuant to 28 U.S.C. § 1446(a), true and accurate copies of documents received in the State Court Action by Numotion are attached to this Notice of Removal. Specifically, attached to this Notice of Removal are true and accurate copies of: (1) the Complaint (**Exhibit A**); (2) the docket in the State Court Action (**Exhibit B**); and (3) summons and proof of service (**Exhibit C**).

9.    No other pleadings or substantive filings have been filed in the State Court Action.

10.    This Notice of Removal is timely because Numotion filed this removal within 30 days of being served with the Complaint. *See* U.S.C. § 1446 (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) (time period for removal begins when the defendant is served); *Brown v. New Jersey Mfrs. Ins. Grp.*, 322 F. Supp. 2d 947, 950 (M.D. Tenn. 2004) (same).

## III.    THIS COURT HAS ORIGINAL JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

11.    This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. § 1332, and removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d). Thus, this Cout is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

12.    Removal is proper here as CAFA provides that a district court shall have original jurisdiction over "a class action if: (1) the class has more than 100 members; (2) the parties are minimally diverse; and (3) the amount in controversy exceeds $5,000,000." *Turnage v. Oldham*,

3

346 F. Supp. 3d 1141, 1149 (W.D. Tenn. 2018). Section 1332(d) further provides that, for original jurisdiction to exist, "any member of a class of plaintiffs" must be a "citizen of a State different from any Defendant." *See* 28 U.S.C. § 1332(d)(2)(A).

13.     As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), Numotion may remove the State Court Action to this federal court under CAFA because: (1) this action is pled as a class action; (2) the putative class includes more than one hundred members; (3) members of the putative class are citizens of a state different from that of Defendant; and (4) the aggregate matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

14.     This Court is in the judicial district and division embracing the place where the State Court Action was brought and is pending. *See* 28 U.S.C. § 93(a)(1). Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a) and 1446(a).

15.     Plaintiff brings his civil action pursuant to Tenn. R. Civ. P. 23.01, which is identical to Federal Rule of Civil Procedure 23. *See Rogers v. Adventure House LLC*, 617 S.W.3d 542, 555 (Tenn. Ct. App. 2020) ("Our Supreme Court has previously determined that because of the identical language in our Rule 23 and in the Rule 23 of the Federal Rules of Civil Procedure that federal authority is persuasive." (internal quotation marks and citation omitted)).

**A.     The Complaint Is Pled as a Putative Class Action.**

16.     CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

17.     Plaintiff brings his civil action pursuant to Tenn. R. Civ. P. 23.01, which is identical to Federal Rule of Civil Procedure 23. *See Rogers v. Adventure House LLC*, 617 S.W.3d 542, 555 (Tenn. Ct. App. 2020) ("Our Supreme Court has previously determined that because of the

4

identical language in our Rule 23 and in the Rule 23 of the Federal Rules of Civil Procedure that federal authority is persuasive." (internal quotation marks and citation omitted)).

18.     This civil action qualifies as a putative class action because Plaintiff seeks to certify a class of approximately 494,000 individuals whose information Plaintiff alleges was impacted in the Data Incident. *See* Compl. ¶¶ 39, 136. Thus, the CAFA requirement that the complaint be pled as a class action is satisfied. *See* 28 U.S.C. § 1332(d)(1)(B).

**B.     Plaintiff Purports to Bring This Action on Behalf of More Than 100 Proposed Class Members.**

19.     Plaintiff seeks to represent a nationwide class of "[a]ll individuals whose Private Information was compromised in the Data Breach beginning on or about September 2, 2024, including all persons who received the Notice Letter from Defendant," Compl. ¶ 131.

20.     Plaintiff further alleges that "[t]he members of the Class are so numerous that joinder of all of them is impracticable," alleging that there are approximately 494,000 members of his Class. *Id.* at ¶ 136.

21.     To date, Numotion has mailed notification to over 442,000 individuals whose information may have been impacted in the Data Incident.

22.     Accordingly, the number of putative class members exceeds the statutorily required minimum of 100 individuals.

**C.     Minimal Diversity of Citizenship Exists Here.**

23.     A district court shall have jurisdiction over "class actions . . . in which any member of a class of plaintiffs is a citizen of a State different from any defendant." *Roberts v. Mars Petcare US, Inc.*, 874 F.3d 954, 955 (6th Cir. 2017) (internal quotation marks and citation omitted); *see also Dean v. Draughons Junior Coll., Inc.*, No. 3:12-CV-0157, 2012 WL 2357492, at *3 (M.D. Tenn. June 20, 2012) (same); 28 U.S.C. § 1332(d)(2)(A).

24.     Defendant's Citizenship. Under 28 U.S.C. § 1332(d)(10), "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." Courts within the Sixth Circuit, including this Court, have concluded that that a limited liability company is an unincorporated association and citizenship is determined pursuant to § 1332(d)(1) in the class action context. *See e.g., Eagles Nest, LLC v. Moy Toy*, *LLC*, No. 2:14-00010, 2014 WL 4655277, at *5 (M.D. Tenn. Sept. 16, 2014) ("For qualifying class actions . . . CAFA abrogates the traditional rule that an unincorporated association" "of which a limited liability company is one" "shares the citizenship of each of its members for diversity purposes." (alteration in original) (internal quotation marks and citation omitted)); *Bozung v. Christianbook, LLC*, No. 1:22-CV-304, 2023 WL 2385004, at *3 (W.D. Mich. Mar. 6, 2023), *amended*, No. 1:22-CV-304, 2023 WL 4540341 (W.D. Mich. July 14, 2023) ("A limited liability company is a type of unincorporated entity. Accordingly, the citizenship provision in § 1332(d)(10) for unincorporated entities in class actions applies to LLCs." (internal citations omitted)); *Ray v. Five Bros. Mortg. Co. Servs. & Securing, Inc.*, No. 7:18-CV-126-REW, 2019 WL 13212702, at *1 n.1 (E.D. Ky. Jan. 23, 2019) ("In the class action context, an LLC is deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." (internal quotation marks and citations omitted)).

25.     As alleged in the Complaint, Numotion is a "Missouri limited liability company" and that its "principal place of business" is in Tennessee. Compl. ¶ 22. As such, Numotion is a citizen of Missouri and Tennessee for purposes of diversity jurisdiction.

26.     Plaintiff's Citizenship. For purposes of diversity, an individual's citizenship is determined by the place of the person's domicile. *See Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 765 (6th Cir. 2019) ("Citizenship . . . turns on 'domicile.'"). "[D]omicile is

6

an individual's permanent place of abode where he need not be physically present," and is "established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Caffey v. Home Depot*, No. 3:14-0476, 2014 WL 1681705, at *2 (M.D. Tenn. Apr. 28, 2014) (internal quotation marks and citation omitted).

27. Here, Plaintiff alleges that he is a citizen of California. Compl. ¶ 20.

28. The Putative Class's Citizenship. The Class Plaintiff seeks to represent is much broader and geographically expansive than Plaintiff's citizenship. Numotion has mailed notifications of the Data Incident to individuals with addresses in all 50 states and the District of Columbia. Thus, where, as here, only one putative class member must reside and intend to remain in a state diverse from Numotion, and where Numotion sent notifications to individuals in all 50 states and the District of Columbia, it is more likely than not that at least one of the approximately 494,000 putative class members is a citizen of a state diverse from Numotion.

29. Accordingly, minimal diversity exists because Numotion is a citizen of Missouri and Tennessee, Plaintiff is a citizen of California, and it is more likely than not that members of the putative class are citizens of a state other than Missouri and Tennessee.

**D.     The Amount in Controversy Exceeds the CAFA Threshold.[1]**

30. The final requirement for CAFA jurisdiction is also met here.

31. It is well established that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*

---

[1] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or is entitled to damages in any amount. Defendant denies liability, denies Plaintiff is entitled to recover any amount, and denies that a class can be properly certified in this matter.

7

*Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (internal quotation marks and citation omitted); *see also Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404–05 (6th Cir. 2007); *Muszik v. Berkshire Hathaway Homestate Ins. Co.*, No. 3:19-CV-5, 2019 WL 13196995, at *2 (E.D. Tenn. Feb. 21, 2019). "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee*, 574 U.S. 81 at 89; *see also* 28 U.S.C. § 1446(c)(2)(B).

32.     The Sixth Circuit has set out that "the amount in controversy should be determined from the perspective of the plaintiff, with a focus on the economic value of the rights [s]he seeks to protect." *See Woodmen of the World/Omaha Woodmen Life Ins. Soc. v. Scarbro*, 129 F. App'x 194, 195–96 (6th Cir. 2005) (internal quotation marks and citation omitted). In determining the amount in controversy in a putative class action, the claims of all putative class members are aggregated to determine if the amount in controversy is more than $5,000,000. *See Sevier Cnty. Sch. Fed. Credit Union v. Branch Banking & Tr. Co.*, No. 3:19-cv-138, 2019 WL 13292900, *3 (E.D. Tenn. June 12, 2019) (aggregating claims of class members to determine whether the amount in controversy exceeded $5,000,000). Where a plaintiff seeks injunctive relief, "the costs of complying with an injunction . . . may establish the amount in controversy." *Hailsolve, Inc. v. Early*, No. 3:24-cv-00299, 2024 WL 2141956, at *2 (M.D. Tenn. May 13, 2024) (alteration in original) (internal quotation marks and citation omitted).

33.     Here, Plaintiff seeks damages, including, but not limited to, "equitable relief" "restitution and disgorgement"; "actual damages, compensatory damages, statutory damages, and statutory penalties"; "punitive damages"; "attorneys' fees and costs"; "pre- and post-judgment interest"; and "[s]uch other and further relief as this court may deem just and proper." *See* Compl. Prayer for Relief.

34.     Plaintiff's Complaint contains no allegations that suggest the amount of actual damages to which he and any member of the putative class are allegedly entitled for his causes of action. Nevertheless, as demonstrated below, the allegations and requested relief in Plaintiff's Complaint supports a finding that the amount in controversy, in the aggregate, exceeds the $5 million amount-in-controversy threshold.

35.     Credit Monitoring Costs. Plaintiff alleges that he and the Class "have been exposed to a heightened and imminent risk of fraud and identity theft." Compl. ¶ 15. In data incident cases involving similar allegations, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements. *See, e.g., Fielder v. Penn Station, Inc.*, No. C12-2166, 2013 WL 1869618, at *2 (N.D. Ohio May 3, 2013) (CAFA jurisdictional limit exceeded with just two years of credit monitoring alone); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 278 (S.D.N.Y. 2008) (concluding that the amount of "credit monitoring costs for [plaintiff] and for the putative class for an indeterminate period beyond one year" "readily exceed[s] $5 million, exclusive of interest and costs"); *Porras v. Sprouts Farmers Mkt., LLC*, No. C16-1005, 2016 WL 405 1265, at *3 (C.D. Cal. July 25, 2016) (three years of credit monitoring at only $15.95 per month for class of only 8,719 exceeded $5 million amount in controversy); *Abdale v. N. Shore-Long Island Jewish Health SYS., Inc.*, No. C13-1238, 2014 WL 2945741, at *6 (E.D.N.Y. June 30, 2014) (considering credit monitoring in amount in controversy exceeding $5 million).

36.     Plaintiff seeks injunctive relief requiring Numotion to "provide credit monitoring and identity theft insurance to Plaintiff and Class members for a period of ten years." Compl. ¶¶ 177, 190, 226, Prayer for Relief.

9

37.     The three main identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from $19.95 to $24.99 per person per month. LifeLock offers a product called Norton360 with LifeLock Advantage which provides 1-Bureau credit monitoring with up to $100,000 in "stolen funds reimbursement" for $24.99 per month.[2] Similarly, both Equifax[3] and Experian[4] offer products that provide 3-Bureau credit monitoring with up to $1,000,000 in identity theft insurance for $19.95 and $24.99 per month, respectively. Multiplying just the cost of providing **one month** of credit-monitoring services at $19.95 (the cheapest of the three products) by the number of proposed Class members, the amount in controversy for just credit monitoring totals over $9 million (494,000 individuals x 1 month x $19.95). This does not include damages for the other alleged "time and effort" that each putative class member is alleged to have spent.

38.     Accordingly, the amount in controversy exceeds the $5,000,000 amount-in-controversy jurisdictional amount before even taking into account the other forms of relief requested by Plaintiff.

39.     "Private Information Value." Plaintiff alleges that as a result of the Data Incident, the value of his and the Class's "Private Information" has "diminished." Compl. ¶ 148.

40.     Plaintiff alleges that he could "receive up to $50 a year," by selling his non-public information to a data broker. *Id.* Taking Plaintiff's allegations at face value and applying them to the number of individuals in his proposed Class, the amount in controversy further exceeds CAFA's threshold.

---

[2] *See* https://us.norton.com/products/norton-360-lifelock-advantage (last visited April 15, 2025).
[3] *See* https://www.equifax.com/personal/products/credit/monitoring-and-reports (last visited April 15, 2025).
[4]*See* https://www.experian.com/protection/creditlock/ (last visited April 15, 2025).

41.     Punitive Damages. Plaintiff also seeks punitive damages. *See* Compl. ¶¶ 166, 225, Prayer for Relief. "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (internal quotation marks and citation omitted); *Donaldson v. BAC Home Loans Servicing, L.P.*, 813 F. Supp. 2d 885, 891 (M.D. Tenn. 2011) ("[P]unitive damages must be considered when determining the amount in controversy, unless it is apparent to a legal certainty that they cannot be recovered.").

42.     Courts have approved punitive damage ratios of 4:1 punitive to compensatory. *See, e.g.*, *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23–23 (1991) (4 times the amount of compensatory damages might be "close to the line" but did not "cross the line into the area of constitutional impropriety"); *Kidis v. Reid*, 976 F.3d 708, 715–16 (6th Cir. 2020) (reiterating that single digit ratios, up to 9:1 comport with due process); *Bascom v. Chawla Hotels Inc.*, 2:22-CV-2630-MSN-TMP, 2023 WL 1965674, at *2 (W.D. Tenn. Feb. 13, 2023) (noting even a "3:1" "punitive-compensatory damages ratio" could exceed the amount of controversy in a single-plaintiff case).

43.      As such, the amount-in-controversy requirement is further met by Plaintiff's request for punitive damages.

44.     Total Amount in Controversy. Just one month of Equifax credit monitoring or just the claimed diminished value of private information for each member of the Class both independently exceed the $5,000,000 CAFA threshold. When considering Plaintiff's requested relief as a whole, including his request for compensatory damages, disgorgement, injunctive or declaratory relief, and punitive damages, the amount in controversy requirement is easily satisfied here.

11

## IV.  RESERVATION OF RIGHTS AND DENIAL OF LIABILITY

45.  Nothing in this Notice of Removal is intended or should be construed as an express or implied admission by Defendant of any fact alleged by Plaintiff, of the validity or merit of any of Plaintiff's claims and allegations, or as a limitation of any of Defendant's rights, claims, remedies, and defenses in connection with this action.

46.  This Notice of Removal is further submitted without waiver of any procedural or substantive defense that may be available to Defendant.

## V.  NOTICE

47.  Numotion is serving this Notice of Removal on Plaintiff's counsel, and a notice of filing this Notice of Removal will be promptly filed with the Chancery Court for the Twenty First Judicial District in and for Williamson County, Tennessee in accordance with 28 U.S.C. §1446(d).

## VI.  CONCLUSION

48.  Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Numotion removes the State Court Action from the Chancery Court for the Twenty First Judicial District in and for Williamson County, Tennessee to the United States District Court for the Middle District of Tennessee, Nashville Division.

Respectfully submitted this 29th day of April, 2025.

/s/ Kimberly M. Ingram-Hogan
E. Todd Presnell (BPR 017521)
Kimberly M. Ingram-Hogan (BPR 35191)
**BRADLEY ARANT BOULT
CUMMINGS LLP**
One 22 One
1221 Broadway, Suite 2400
Nashville, TN 37203
Telephone: (615) 252-2355
Facsimile: (615) 252-6355
tpresnell@bradley.com
kingram@bradley.com

Casie D. Collignon (*pro hac vice*
forthcoming)
Keeley O. Cronin (*pro hac vice*
forthcoming)
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202-2662
Telephone: (303) 861-0660
Facsimile: (303) 861-7805
ccollignon@bakerlaw.com
kcronin@bakerlaw.com

*Counsel for Defendant United Seating
and Mobility, LLC d/b/a Numotion*

13

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 29, 2025, the foregoing Notice of Removal was served via

ECF, email, and U.S. mail upon the following:

J. Gerard Stranch, IV
Grayson Wells
Miles Schiller
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, Tennessee 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com
mschiller@stranchlaw.com

Liberato P. Verderame*
Marc H. Edelson*
EDELSON LECHTZIN LLP
411 S. State Street, Suite N300
Fort Lauderdale, FL 33301
Newtown, PA 18940
Tel: (215) 867-2399
medelson@edelson-law.com
Iverderame@edelson-law.com

*/s/ Kimberly M. Ingram-Hogan*
Kimberly M. Ingram-Hogan
